UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY J. KRONZ,

     Plaintiff,                                 Case No. 21-
                                                Hon.

v.

CITY OF IMLAY CITY,

     Defendants.

_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com
_____/

**PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, JEFFREY J. KRONZ, by and through his attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendants, CITY OF IMLAY CITY, stating as follows:

**COMMON ALLEGATIONS**

1.     That at all times material hereto, Plaintiff is a resident of the County of Lapeer, State of Michigan and is otherwise domiciled in the State of Michigan.

2.    That Defendant, CITY OF IMLAY CITY, is a home rule city operating within the territorial bounds of the County of Lapeer, State of Michigan and is otherwise domiciled in the State of Michigan.

3.    That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

4.    That venue is proper with this Honorable Court pursuant to 28 U.S.C. § 1391.

5.    That this Honorable Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331.

6.    That Plaintiff began working with Defendant City of Imlay City as a full-time police officer in December of 2006.

7.    That in 2016, Scott Pike became the Chief of Police for Defendant City of Imlay City.

8.    That since Chief Pike took over as Chief of Police, Defendant Pike had engaged in what Plaintiff perceived to be discriminatory conduct and harassment directed towards him, which affected a term, condition, or privilege of his employment.

9.    That Plaintiff had previously reported his concerns of Chief Pike's behavior directly to Chief Pike; however, Defendant Pike took no corrective

action.

10.    That on or about February 3, 2020, Plaintiff submitted a five-page complaint alleging "Illegal Discrimination/Harassment" by Chief Pike to the City Manager, Thomas Youatt.

11.    That on or about February 11, 2020, Mr. Youatt sent Plaintiff correspondence indicating that the City of Imlay City would be investigating his complaint of discrimination and hired an "outside investigator," Thomas L. Fleury, a partner in the law firm of Keller Thoma, who has typically defended public and private employers.

12.    That on or about April 8, 2020, Mr. Youatt met with Plaintiff and his union representative, Jim Tignelli.

13.    That Mr. Youatt informed Plaintiff that the "investigation" conducted by Mr. Fleury had "completely exonerated Chief Pike from any age or sex discrimination."

14.    That Mr. Youatt subsequently quoted portions of the Investigation Report, in his notes from the meeting with Plaintiff and Mr. Tignelli, writing:

> The Investigation Report contains information that you filed the complaint only to retaliate against the Chief for what you perceived to be an unfair written reprimand that you received in July 2019. The report also states that there is a possibility that you intentionally lied or fabricated facts to establish the retaliation. Alternatively, the report states there is a possibility that your complaint was a result of your "unstable emotional state" and that, although facts were taken out of context and embellished, you did not "intentionally" submit a false

report.

> The Investigation Report contains information that your verbal statements and physical appearance established that you were extremely angry and sometimes out of control.  Furthermore, there was substantial corroboration from all those interviewed that you have exhibited paranoia and anger with regard to work issues.

15.    That despite the above-quoted language being clear evidence of retaliation, it should be noted that neither Mr. Youatt nor Mr. Fleury have a medical background such that they could diagnose Plaintiff with an "unstable emotional state" or "paranoia."

16.    That as a result of said Investigation Report, Defendant required Plaintiff "submit to a fitness for duty evaluation with a qualified health professional," and pending said evaluation, Plaintiff would be on paid administrative leave.

17.    That Defendant relied upon Article XXIV, Section 24.1 of the collective bargaining agreement, which provides:

> The City may, at its discretion, require that employees submit to physical and mental tests and examinations by a City appointed doctor when such tests and examinations are considered to be of value to the City in maintaining a capable work force, employee health and safety, etc., provided however, that the City will pay the cost of such tests and examinations.

18.    That Defendant did not provide Plaintiff with notice of the allegations being made against him or the factual basis for those allegations, such as who determined Plaintiff exhibited paranoia and who corroborated the same.

19.     That Defendant did not provide Plaintiff an opportunity to respond to said allegations.

20.     That Defendant failed to provide Plaintiff any due process.

21.     That Defendant subsequently referred Plaintiff for a "fitness for duty referral" to Linda K. Forsberg, Ph.D.

22.     That in submitting paperwork to Dr. Forsberg's office, Defendant stated that the reason for the referral was "Please see attached 'Investigation of Complaint by Police Officer Jeffrey Kronz.'"

23.     That in other words, Defendant's basis for the referral was the report authored by Mr. Fleury.

24.     That due to various irregularities in the process, Dr. Forsberg refused to author a fitness for duty evaluation.

25.     That on or about November 11, 2020, Defendant informed Plaintiff that he would not be allowed to return to work until after completing a second medical examination with Judith M. Malinowski, Ph.D. on December 4, 2020.

26.     That Defendant did not provide Plaintiff with any information as to why he would be required to undergo a second evaluation and did not provide Plaintiff an opportunity to respond.

27.     That on or about December 8, 2020, Defendant placed Plaintiff on an indefinite unpaid leave of absence.

28. That it should be noted that Plaintiff's physicians have not questioned his fitness for duty and have affirmed that he is fit for duty.

29. That Defendant denied Plaintiff due process by requiring him to submit to medical examinations without giving him notice of the reasons or an opportunity to respond.

30. That Defendant interfered with Plaintiff's liberty and/or property interests in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

31. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences that would be incurred as a result of recovery.

32. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

33.     That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

34.     That Plaintiff hereby claims punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT I – DENIAL OF DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983

35.     That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 34 of his Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

36.     That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

37.     That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1; *see also Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

38.     That "[a] public employee is entitled to procedural due process— including the opportunity for a hearing—and substantive protections if he stands to

lose a constitutionally protected property or liberty interest." *Houchens v. Beshear*, 441 F. Supp. 3d 508, 517 (E.D. Ky. 2020).

39.    That at all times material thereto, Defendant and/or its agents acted under the color of State law.

40.    That Plaintiff has a constitutionally protected liberty and/or property interest Defendant interfered with.

41.    That the United States Supreme Court has recognized that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan by Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278; 110 S. Ct. 2841 (1990); *see also id.* at 278 (noting "the recognition of a general liberty interest in refusing medical treatment").

42.    That Plaintiff has a constitutionally protected liberty and/or property interest in refusing unwanted medical treatment.

43.    That Defendant interfered with Plaintiff's constitutionally protected liberty and/or property interest by mandating Plaintiff undergo specified medical treatment.

44.    That when a protected liberty or property interest is implicated, "the right to some kind of prior hearing is paramount." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570; 92 S. Ct. 2701 (1972).

45.    That as one District Court has noted:

> The idea behind procedural due process—including in the context of a state-created liberty interest—is that the interest cannot be taken away arbitrarily. Instead, a state-created liberty interest can be taken away, if at all, only pursuant to procedures reasonably geared (under the circumstances) to obtaining an *accurate* determination as to whether, under applicable criteria, it should be taken away.

*Memphis A. Phillip Randolph Institute v. Hargett*, 482 F. Supp. 3d 673, 684 (M.D. Tenn. 2020).

46.    That Defendant did not provide Plaintiff with any process prior to requiring Plaintiff to undergo medical treatment and evaluation.

47.    That Defendant did not provide any opportunity for Plaintiff to be heard prior to requiring him to undergo medical treatment and evaluation.

48.    That Defendant interfered with Plaintiff's liberty and/or property interest to refuse unwanted medical treatment by failing to provide him any due process.

49.    That at all times material hereto, Defendant acted pursuant to an official policy or custom of the City of Imlay City.

50.    That at all times material hereto, the City of Imlay City had delegated final policy-making authority relating to requiring employees undergo medical treatment and/or evaluation to its City Manager and Chief of Policy and, as such, the City Manager and/or Chief of Police was the person with final policy-making authority relevant to the actions taken in this case. *See Pembaur v. City of Cinncinati*, 475 U.S. 469, 483; 106 S. Ct. 1292 (1986)(plurality).

51.     That Defendant has further had an official policy or custom of requiring employees undergo medical treatment an evaluation without providing due process.

52.     That any and all decisionmakers acted in accordance with said official policy or custom.

53.     That Defendant is not entitled to any type of immunity as a municipal entity. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005).

54.     That Defendant interfered with Plaintiff's liberty and/or property interests in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

55.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences that would be incurred as a result of recovery.

56.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright,

mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

57.    That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

58.    That Plaintiff hereby claims punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>November 11, 2021</u>    By:    <u>*/s/ Victor J. Mastromarco, Jr.*</u>
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COMES Plaintiff, JEFFREY J. KRONZ, by and through his attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all of the above issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>November 11, 2021</u>      By:      */s/ Victor J. Mastromarco, Jr.*

VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414